INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v. T. J. HOOD.

Decided April 17, 1909.

**1.—Appeal—Irregularities—Waiver.**

The original, and not a copy of the statement of facts should be embraced in the record on appeal; but the insertion of a copy instead of the original is a mere irregularity which might be waived, and will be held to have been waived by a failure on the part of the appellee to object in due time to a consideration of such statement by the appellate court.

**2.—Carrier—Ejection of Passenger—Reasonable Care.**

A passenger who had purchased a ticket for transportation, but had innocently left it behind when boarding the train is not strictly speaking a trespasser on the train, and the carrier is required to exercise care in the selection of a time and place for the ejection of such passenger.

**3.—Damages—Pleading—Mental Distress—Synonymous Terms.**

In a suit for damages for personal injuries the petition did not allege "mental distress" in those words, but did allege that the plaintiff was "mortified," "humiliated" and "ashamed." Held, a charge that if the jury found for plaintiff they could consider "any pain of body, any mental distress, any humiliation or shame," was not calculated to cause the jury to award double damages.

Appeal from the District Court of Navarro County. Tried below before Hon. L. B. Cobb.

*John M. King* and *Baker & Thomas,* for appellant.

*Richard Mays,* for appellee.

RAINEY, CHIEF JUSTICE (on motion for rehearing by appellant).—
Upon a reconsideration of this case we have reached the conclusion
that we erred in our former disposition of the case in holding that
the statement of facts could not be considered as it was copied in
the transcript and was not the original. When the statement of facts
is copied in the record, instead of having the original sent up, unless
objection is made the irregularity will be considered waived and the
said statement will be considered in deciding the case. Royal Ins.
Co. v. Texas & G. Ry. Co., 102 Texas, 306.

There was a waiver in this case by the appellee. He prepared a
brief contesting appellant's right to a reversal of the judgment, had
it printed and filed in the case, and raised no objection to the con-
sideration of the statement of facts copied in the record until the day
before the cause was submitted, when he filed a supplemental brief
objecting to the consideration of said statement of facts. If it could
be said that the briefing of the case by appellee was not a waiver, the
failure to file an objection until the day before submission was too
late. Rule 8 for the Courts of Civil Appeals reads: "All motions
relating to informalities in the manner of bringing a case into court
shall be filed and entered by the clerk on the motion docket at least
forty-eight hours before 10 o'clock a. m. of the day on which the
cause is set for a hearing, under section 23 of the Act entitled 'An
act to organize the Courts of Civil Appeals, to define their jurisdic-
tion and powers, and to prescribe the mode of procedure therein,' ap-
proved April 13, 1892; otherwise the objection shall be considered as
waived if it can be waived by the party; such filing and docketing
will be sufficient notice of the motion."

Appellee's supplemental brief was but a motion to strike out the
statement of facts for being a copy and not the original, a mere in-
formality that could be waived. The appellee not having filed his
*motion* forty-eight hours before ten o'clock a. m. of the day on which
the cause was submitted, comes too late, and the motion for rehearing
is granted, and the cause will be considered on its merits.

Appellee's cause of action as alleged, in substance, is that his wife
and daughter boarded the appellant's train at Mertens, Hill County,
holding tickets entitling them to transportation to Leroy, McLennan
County, and return. After visiting in the country near Leroy for
a few days, they left the country for Leroy to return home. Upon
reaching Leroy in their haste they boarded the train, leaving their
pocketbook containing the tickets in the wagon in which they had gone
to Leroy. After the train pulled out the conductor came around col-
lecting tickets and when he reached them they told him of having
accidentally forgotten their tickets and of having left them on the
seat of the wagon and, having no money to pay their fare, they re-
quested the conductor to stop the train, which had only run a short
distance and was moving slowly, that they might get off and get their
tickets, which he declined to do in a gruff, crabbed and insulting
manner, informing them that he was going to put them off the train,
and then left them. After some little time had elapsed and the train

had gotten under headway, he returned and stopped the train and put them off in a deep cut, where there was a deep ditch, the distance from the lowest step to the bottom of the ditch being about five feet. That the negro porter placed a foot stool for them which turned over and was not straightened. In getting off, by reason of the distance they had to step they were caused to expose their lower limbs, which was very humiliating. This point was about one and one-half miles from the station, which they had to walk in returning. Mrs. Hood was in bad health. It was a raw, disagreeable day, etc. That the shock and walk made her sick, and she suffered humiliation in consequence of the acts of the conductor.

There was evidence introduced by plaintiff in support of his allegations.

The appellant introduced contradictory testimony. The conductor testified: "I remember the occasion of Mrs. Hood and daughter getting on my train at Leroy in March, 1907. I helped them on the train myself. After getting on the train I gave the signal to the engineer to go ahead and I walked from the front car into the second car and as I came to them and asked for tickets, the older one of the ladies commenced searching for her ticket. I stood right by her side in the aisle and after she had searched a while she said, 'I left my purse and ticket on the seat of the wagon.' I said, 'Madam, what do you want to do about it?' She says, 'Can't you stop and let me get off?' I said, 'Yes, madam,' and I turned round and pulled the signal whistle and the train stopped. The porter came in and got the stool and put it down on the ground, and put his foot on it to hold it, and we helped them off." There was also testimony tending to contradict the plaintiffs as to the distance the train stopped from Leroy and as to the assistance they received in alighting from the train.

The court refused to give a special charge requested by appellant, which is assigned as error, as follows: "If you believe from the evidence in this case that at or about the place where plaintiff's wife and daughter disembarked from said train, that plaintiff's wife requested the conductor to let them off at said place, and that in putting them off of said train the conductor used ordinary care (that is, such care as an ordinarily prudent person would exercise under such circumstances) then you are instructed that the plaintiff can not recover in this case."

The refusal of this charge was error. It presented a theory of appellant's defense which was raised by the evidence and which was not embraced in the court's charge.

All the assignments have been considered, but none show cause for reversal, other than the one above mentioned.

The judgment is reversed and cause remanded.

ON MOTION FOR REHEARING BY APPELLEE.

On a former day of this term we reversed and remanded this case on the ground that the court refused to give a special charge requested by appellant. In the motion for rehearing our attention is called to the fact that said charge was sufficiently covered by the main charge

of the court. This being so our decision was error. The paragraph of the court's charge relating to this issue reads: "If the conductor stopped the train on Mrs. Hood's request as soon as he might with the use of ordinary diligence, plaintiff is not entitled to recover." This paragraph of the charge we think fully and concisely covers the requested instruction, and appellant has no cause for complaint on this score.

The following paragraph of the charge is complained of, viz.: "Yet if you believe from the preponderance of the evidence that she gave him the said information while the train was just leaving the depot at Leroy or was very near the depot, and at the same time requested him to stop the train and allow her to alight; that he disregarded her request and used no reasonable diligence to stop the train, but carried her on a considerable distance further than she would have gone had he used reasonable diligence to stop the train, and caused her to alight at a place unknown and strange to her, where there was a ditch so near the track and so deep that in getting off she necessarily exposed her lower limbs, and if you find that in doing so, the conductor committed negligence, and that as the direct proximate result of his acts, she suffered in body or in mind, or was made sick, then you will find for the plaintiff."

The first proposition presented is as follows: "This charge announces an incorrect proposition of law, in that, it requires the conductor to use reasonable diligence to stop the train in pursuance of a request made by appellee's wife to allow her to alight, whereas the law is that the conductor had the right to expel appellee's wife from the train upon her failure to produce a ticket or pay her fare, regardless of such request, and appellant could only be held liable for the exercise of ordinary care in selecting the place of expulsion and the manner of expulsion, the right thereof being authorized and in no sense wrongful."

There was evidence adduced that Mrs. Hood and daughter had purchased tickets over appellant's road from Mertens to Leroy and return. They had been transported to Leroy and after spending a while in the country near there had started back to Mertens. They went to Leroy in a wagon, and when they alighted at the depot they left their satchel, which contained the return part of their tickets, in the wagon and boarded the train without them. This they never discovered until the train started. When the auditor came to collect tickets and they explained the absence of the tickets, the conductor said he would have to put them off, but he went forward and after going some distance he stopped and put them off at an inconvenient place. The testimony of the conductor and the ladies differed as to the time they were put off—whether it was when he first went to them collecting tickets, or when he returned the second time. This was the issue raised by the evidence and the one the court was endeavoring to present, and not whether the train was or was not stopped by virtue of the request of Mrs. Hood. Had the train been stopped immediately upon the conductor's ascertaining that the ladies had no tickets, it is contended that no harm would have resulted as it was

near the depot and a more suitable place for alighting, but that he did not do this, but went some distance further and stopped at a place unsuitable for ladies to alight.

Mrs. Hood and daughter were not in the strict sense trespassers for they had boarded the train having bought tickets entitling them to transportation, but had innocently left them on the seat of the wagon. Conceding that the conductor had the right to eject them on their not producing the tickets, he should have done so at a time and place more suitable.

The second objection to said charge is, that the charge making appellant's liability depend upon the failure to stop the train at the request of Mrs. Hood, is in conflict with that portion of his charge which instructs the jury that, "inasmuch as Mrs. Hood got on the train without tickets and without money to pay her fare and informed the conductor, he was under no obligation to permit her to ride and had the right to require her to get off the train," which conflict was calculated to confuse the jury. We do not think the charge is susceptible to this construction. When the charge is considered as a whole it does not bear the construction that the conductor had to stop the train at the request of Mrs. Hood, but the reference to her request referred to the time said request was made as distinguished from the time the train stopped at a point a considerable distance further than when she made the request. Viewed in this light the charge was not contradictory or misleading.

Complaint is made of the court's charge wherein the jury were told if they found for plaintiff that they could consider "any pain of body, any mental distress, any humiliation or shame," etc. The contention is that there is no allegation of "mental distress," and that it authorizes a double recovery. While the charge is not entirely free from criticism, it is not so erroneous as to require a reversal of the judgment. There is no allegation in the petition of "mental distress" by that term, but the terms, "humiliated," "mortified" and "ashamed" are used, showing mental suffering. These are sensibilities of the mind and show mental distress. The charge was not calculated to cause the jury to award double damage.

The part of the charge that tells the jury to allow compensation for such elements of damage caused by "getting off the train and proximately resulting therefrom," was not misleading. The expression, "getting off the train," has reference to the transaction—that is, to the manner, time and place of expulsion, and when taken in connection with the balance of the charge it did not authorize a recovery for expulsion from the train unless the employes were negligent in putting the ladies off the train at the time and place and in the manner it was done.

Complaint is made that the verdict is excessive. While the verdict is large, we are not prepared to say that the jury were not authorized, under the evidence, to assess the sum of $1,000, the amount of the judgment.

There are several assignments of error presented that we have not specifically mentioned, but all have been considered, and we are of the opinion that they are not well taken.

The motion of appellee for rehearing is granted, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.