INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v. T. J. HOOD.

Decided November 13, 1909.

**1.—Carrier—Request not Equivalent to Demand.**

Where the evidence shows that only a simple request was made of a conductor of a passenger train that he back the train to a station in order that plaintiff might alight and procure her ticket, a special charge predicated on the assumption that plaintiff demanded that the train be backed was not in accordance with the evidence, and was therefore properly refused.   A demand is materially different from a simple request.

**2.—Ejection from Railroad Train—Evidence—Excessive Verdict.**

In a suit for damages for shame and mental anguish suffered by a female passenger by reason of the exposure of her lower limbs while being ejected from a passenger train, evidence considered and held insufficient to support a verdict for $1,250, and remittitur of $750 required.

Appealed from the District Court of Navarro County.    Tried below before Hon. L. B. Cobb.

*King & Morris* and *Baker & Baker,* for appellant.—There is no evidence in this record that Alma Hood sustained any injury or damage to her person in any manner other than the alleged shame, and it is not contended that this had any consequential effects, therefore the conclusion is irresistible that the jury were influenced by passion or prejudice in reaching such an excessive verdict.    Missouri, K. & T. Ry. v. Mitchell, 105 S. W., 827; Missouri, K. & T. Ry. v. Snider, 33 S. W., 557; Gulf, C. & S. F. Ry. v. Ryan, 18 S. W., 866; Texas & P. Ry. v. Dennis, 23 S. W., 402; Missouri, K. & T. Ry. v. Ball, 61 S. W., 327; International & G. N. Ry. v. Hood, 118 S. W., 1122.

*Richard Mays,* for appellee.—The verdict of the jury was not excessive under the testimony, and the trial court committed no error in

refusing to require the plaintiff to remit any part of it. International & G. N. Ry. Co. v. Gilbert, 64 Texas, 536; Texas & P. Ry. Co. v. Lynch, 73 S. W., 65; Gulf, C. & S. F. Ry. Co. v. Luther, 40 Texas Civ. App., 517; Houston & T. C. Ry. Co. v. Berling, 14 Texas Civ. App., 544; San Antonio & A. P. Ry. Co. v. Harding, 11 Texas Civ. App., 497; Galveston, H. & S. A. Ry. Co. v. Hynes, 21 Texas Civ. App., 34; Gulf, C. & S. F. Ry. Co. v. Moody, .39 S. W., 987; International & G. N. Ry. Co. v. Wilkes, 68 Texas, 617; Wells-Fargo Express Co. v. Fuller, 13 Texas Civ. App., 614; Texas & P. Ry. Co. v. Johnson, 2 W. & W., sec. 189; Missouri Pac. Ry. Co. v. Martino, 2 Texas Civ. App., 634; International & G. N. Ry. Co. v. Hood, 118 S. W., 1119.

TALBOT, ASSOCIATE JUSTICE.—T. J. Hood, the father of Alma Hood, a minor, brought this suit as her next friend, against the International & Great Northern Railroad Company to recover damages sustained by Alma in an ejection by the railroad company's servants from one of its passenger trains. It is alleged, in substance, that appellee purchased from appellant's agent at Mertens, on or about the 7th day of March, 1907, two round-trip tickets to Leroy; that one of said tickets was purchased for the said Alma Hood and the other for her mother. That Alma and her mother, upon the purchase of said tickets, took passage on appellant's southbound passenger train, and that when they arrived at Leroy they left the train and visited relatives living several miles in the country; that on or about March 10, 1907, they returned to Leroy, and there boarded one of appellant's passenger trains to return to Mertens; that after getting aboard of the train they discovered they had left their return-trip tickets in the wagon in which they had ridden to Leroy. That after the train left Leroy, and when only a very short distance therefrom, the conductor came into the coach in which Alma Hood and her mother were seated, taking up tickets, and that he was then informed by them that they had accidentally left their tickets on the seat of the wagon at Leroy, and, having no money with which to pay their fare, they requested the conductor to stop the train in order that Alma might run back and get the tickets, which he declined to do. That after said request was declined the said Alma and her mother stated to the conductor that they were without tickets and had no money, and asked him what he was going to do about it, to which he replied in a gruff manner that he was going to put them off the train; that the conductor did not stop the train at this time, but went to the other end of the car taking up tickets, and then passed out of the car and remained for some little time, during which time the train had gotten faster and faster and under full headway; that after the train had run about a mile and a half the conductor returned into the car in which Alma and her mother were riding and stopped the train and put them off in a deep cut. That the only assistance rendered plaintiff in alighting from the train was the action of the negro porter in placing a footstool on the ground, which was so negligently done that it turned over and was not straightened. That at the point where plaintiff was put off there was a deep ditch; that in getting off the train she had to hold on to

the handle-bar and swing off until she could lower herself to a point where she could stand upon the ground, and that so great was the distance from the steps of the platform of the car to the ground her lower limbs were necessarily and unavoidably exposed to the view of the porter and conductor, in consequence of which she suffered shame and humiliation.

The defendant plead the general issue, contributory negligence on the part of the plaintiff in entering appellant's car without a ticket, and that she got off the train voluntarily; that appellant did not know that plaintiff had entered its car without a ticket until its conductor approached her to take up her ticket, and upon ascertaining that she did not have one asked her her desire, whereupon she requested that she be allowed to get off, which request was complied with as soon as the train could be stopped. A jury trial resulted in a verdict and judgment in favor of plaintiff for the sum of $1,250, and the appellant appealed.

Appellant requested the trial court to charge the jury as follows: "You are instructed that if you believe from the evidence that plaintiff got on this train without a valid ticket entitling her to travel on said train, then and in that event the company would be authorized to eject the plaintiff in such manner as not to endanger her safety and with the force that a person of ordinary prudence and care would exercise under like or similar circumstances. You are further instructed that the plaintiff would have no right to demand of the defendant to put her off at any other place than a regular station or stopping place, nor to demand that the train be run back to the station to enable her to get her ticket, which she had left without any fault of the railway company." This charge was refused, and its refusal is assigned as error. The only proposition accompanying the assignment is that, "The plaintiff had no right to demand of the defendant that the train be run back to the station to enable her to get her ticket, which she had left without any fault of the railway company, because Alma Hood's evidence shows that she asked the conductor to stop the train and let her go back and get her ticket, and the appellant had the right to have the law applied to this evidence so that the jury could not blame the appellant or be prejudiced against it for not stopping the train and allowing her to get off and get her ticket."

As will be noted, the only error charged and complained of is the court's refusal to give the latter portion of the charge quoted, to the effect that "the plaintiff had no right to demand of the defendant that the train be run back to the station to enable her to get her ticket, which she had left without any fault of the railway company." Whether the failure to give that particular portion of the charge was error is, therefore, the only question raised by the assignment. No evidence is pointed out by appellant calling for or authorizing the giving of such an instruction. The evidence cited in support of this assignment, under the statement required by the rules to be made, is that Alma Hood testified: "I simply asked him (the conductor) to stop the train and let me go back and get my tickets and money, and he wouldn't do that." Under the head of "remarks" counsel say: "The undisputed evidence in this case shows that the plaintiff, accompanied

by her mother, entered the appellant's coach without a ticket, having left the same on the seat of a wagon at the depot, and that they requested that the conductor stop the train and allow them to get off and get their tickets." A demand that the train be run back to the station to enable plaintiff to get her ticket is a materially different proposition to a simple request that the conductor stop the train and let plaintiff go back and get her ticket.

But if it should be conceded that the assignment or proposition was broad enough to include the request that the train be stopped to enable her to go back to Leroy and get her tickets, still we think there was no material error in refusing the instruction asked. There was no evidence offered with the view of showing that plaintiff had the right to demand that the train be stopped and she allowed to go back to the station and get her ticket; nor do we find anything in the record indicating that any such contention was made by plaintiff during the trial of the case. It is not at all likely, we think, that the jury may have concluded from the simple request of plaintiff that the train be stopped to enable her to go back and get her ticket, that it was appellant's duty to grant the request, and that they were influenced thereby in rendering the verdict they did.

Complaint is made of the court's refusal to give the following charge requested by appellant, to wit: "If you believe from the evidence in this case that at or about the place where plaintiff's daughter disembarked from said train, that plaintiff's daughter or her mother, who accompanied her, requested the conductor to let them off at said place, and that in putting them off of said train the conductor used ordinary care (that is, such care as an ordinarily prudent person would exercise under such or similar circumstances), you are instructed that the plaintiff can not recover in this case." There was no error in refusing this charge, because it was sufficiently covered by the court's main charge. Touching this issue the court instructed the jury: "That if plaintiff requested the conductor to stop the train, so that she might get off, and he complied with her request and caused the train to be stopped as promptly as he reasonably and properly could, then she could not recover, though the train did stop in an inconvenient place for alighting. But if the conductor disregarded her request to stop the train, and after going a very considerable distance beyond where the train could have been properly and safely stopped in the exercise of ordinary care, after receiving her request, and of his own motion stopped the train in a manifestly improper place for her to alight, he could not properly attribute the stopping to her request." He further charged that if the conductor stopped the train on plaintiff's request she could not recover. That if he did not stop the train at her request, yet if he was not wanting in ordinary care (ordinary care being defined) in choosing the place to stop the train, the defendant was not liable. In International & G. N. Railway Co. v. Hood, 118 S. W., 1119, a companion case to the one at bar, it was held that the refusal of a charge identical with the one under consideration, and practically under the same state of facts, was not error.

It is assigned that the verdict of the jury is excessive, and we think the assignment well taken. The only element of damage submitted by

the court's charge was the alleged shame and anguish of mind suffered by Alma Hood by reason of the exposure of her lower limbs while getting off of appellant's train. The testimony of Alma Hood, who will hereafter be referred to as plaintiff, and that of her mother, is the principal and material testimony upon the question. She testified, so far as we deem it necessary to state, as follows: "When the train stopped and he told us to come on and get off, neither the conductor nor the porter rendered us any assistance whatever. Neither the porter nor the conductor took my suit case or valise to take it off for me; we took them ourselves. When we walked out of the car and got down on the steps to get off the conductor was standing on the platform of the train, and the porter was standing out on a little knoll against the embankment. In getting off neither the porter nor conductor assisted us. We had a suit case and a little box; I was carrying the suit case and mama was carrying the box; it was a little paste-board box. Neither the porter nor the conductor offered to take the suit case from my hands as I was getting off; I held it in my hand and swung down with the other hand. They put the foot-stool for us to step on in getting off the train, but it had fallen down and was down on one side; they did not stand it up when they saw it had fallen down. There was a ditch on the side of the track where we got off—a deep ditch; the stool had fallen over, and in order to strike the bottom in swinging off the steps I had to hold my suit case in one hand and hold the handle-bar with the other and swing off, and I just could reach the stool with my toes while hanging to the handle-bar. This negro porter was standing over on a sort of knoll on the side of the embankment opposite to where I got off, and the conductor was standing up on the platform. In my effort to get off there I think I exposed some of my person. I do not remember whether the wind was blowing through that cut or not. I was embarrassed by having to stretch down there that far, and I felt ashamed because I thought my lower limbs were exposed to the porter standing on the knoll. The reason I thought my lower limbs were exposed to the gaze of that negro porter was because I had to stretch down so far; I felt like they were, anyway; they felt to me as if they were exposed. While we were getting off, and while the train was moving off and leaving us there, I saw the passengers on the train looking out to see what was going on. This place where they put us off was not in sight of the depot. When we got back to the depot we found our purse and tickets; we stayed at the depot a little while and then went to the boarding-house, which was about five hundred yards from the depot. I don't know exactly what time we got away from Leroy; it was late that evening; we used the same tickets. My father met us at Mertens. . . . I did not request him to stop the train in that deep cut and voluntarily get off. I got off the train because he told us to get off. The conductor's manner towards us was very crabbed."

Mrs. T. J. Hood testified substantially as did the plaintiff, her daughter, and that the conductor, in telling them that he would not stop the train for Alma to go back to the station and get their tickets, spoke in a gruff sort of way; that all he spoke was in a very gruff

way; that when her daughter was getting off the train she exposed her lower limbs.

This evidence does not show any injury whatever to the plaintiff, Alma Hood, in consequence of her ejection from appellant's train, except the shame, humiliation and mental distress resulting from the exposure of her lower limbs to view in alighting from said train. The shame and humiliation experienced was due according to her own testimony to the fact that her lower limbs were exposed to the gaze of the negro porter of the train. She says: "I was embarrassed by having to stretch down there that far, and felt ashamed because I thought my lower limbs were exposed to the porter standing on the knoll." We regard the evidence clearly insufficient to authorize the verdict of $1,250, returned by the jury, and upon which judgment was entered. Therefore, unless the appellee shall enter a remittitur in the sum of $750, the judgment of the court below will be reversed and the cause remanded for a new trial. The evidence was sufficient to show negligence and liability on the part of the appellant, and that a judgment for $500 is not excessive. If, therefore, the remittitur above suggested is entered within fifteen days, the judgment for $500 will be affirmed.

*Affirmed on remittitur.*